## NATIONAL BANK OF NEWPORT v. RAND.

(Circuit Court of Appeals, Second Circuit. February 1, 1926.)

### No. 29.

1. **Banks and banking ☞270(2)—If national bank agreed to borrow money to make loan, borrower to pay such interest rate as bank paid, transaction was not within usury laws.**

If national bank, in state where legal interest rate is 6 per cent., agreed to borrow money to make loan, borrower to pay rate bank would have to pay, and bank borrowed money in another state at 7 per cent., which was legal in such state, *held*, that transaction was not within any usury laws, state or federal, and Rev. St. §§ 5197, 5198 (Comp. St. §§ 9758, 9759), authorizing borrower to recover twice amount of usurious interest paid, would not apply.

2. **Banks and banking ☞270(11)—Whether national bank was borrower's agent in borrowing money in another state at higher interest than permitted in state where bank was located held for jury.**

Whether national bank acted as borrower's agent in borrowing money in another state at higher interest rate than permitted in state where bank was located, so as to avoid effect of state usury laws, and Rev. St. §§ 5197, 5198 (Comp. St. §§ 9758, 9759), authorizing borrower to recover double amount of usurious interest paid, *held* for jury.

In Error to the District Court of the United States for the District of Vermont.

Action by Roscoe D. Rand against the National Bank of Newport. Judgment for

plaintiff, and defendant brings error. Reversed, and new trial ordered.

Defendant below, being a national bank, is subject to sections 5197 and 5198, R. S. (Comp. St. §§ 9758, 9759), providing that the rate of interest to be charged by national banks shall be "at the rate allowed by the laws of the state, territory, or district where the bank is located, and no more, except that where by the laws of any state a different rate is limited for banks of issue organized under state laws, the rate so limited shall be allowed" to national banks.

Further the statutes declare that taking "a rate of interest greater than is allowed" shall, "when knowingly done, * * * be deemed a forfeiture of the entire interest" charged. But if the unlawful rate of interest has been paid the person paying it "may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid," from the bank taking or receiving the same.

This is an action to recover twice the amount of interest alleged to have been paid by Rand to the defendant bank at the rate of 7 per cent. when (the bank being in Newport, Vt.) the statutory rate in Vermont was but 6 per cent.

We shall advert to the evidence in our opinion. The court below in substance directed verdict for Rand, the plaintiff below, and the defendant bank took this writ.

John W. Redmond and Walter H. Cleary, both of Newport, Vt., for plaintiff in error.

A. W. Farman, of Newport, Vt., for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The declaration avers that on or about November 1, 1919, the bank loaned Rand $10,400, "with interest at 6 per cent. per annum." On November 1, 1920, plaintiff paid all interest due and "renewed said note"; but "upon said renewed note the defendant knowingly reserved and charged a rate of interest exceeding" the lawful rate, viz. 7 per cent.

The plea avers that, before the said $10,400 was loaned to Rand, he well knew that the bank "did not have the necessary funds to make the said loan, and would necessarily have to borrow the same upon such security as it might be able to give, and might have to pay a larger rate of interest than 6 per cent. and [Rand] instructed [the bank] to borrow said money for [him], and to pay

10 F.(2d)—44

therefor whatever rate of interest was necessary, which [the bank] did, and [Rand] agreed to reimburse [the bank] for the money" it had to borrow, as well as for the interest it had to pay.

The bank's witnesses deposed to an arrangement with Rand as pleaded. It appeared that Rand was a depositor in the savings bank department of defendant, and seems to have been favorably known to the bank's cashier.

[1] Result of testimony for the bank is that at the inception of the loan it was agreed that the bank should borrow the money to loan to Rand, and that Rand should pay whatever rate the bank had to pay for the money, so that the loan to Rand was entirely an accommodation, and no profit accrued to the bank from the transaction. Rand denied the arrangement.

The court, in directing verdict, remarked: "The parties are not at issue here on the facts; they are at issue on the law. * * * This court is of the opinion that it makes no difference whether the bank was acting as Mr. Rand's agent; whether [the bank] was paying 7 per cent. for the money; whether [it was] accommodating him; whether [it was] making any profit on the transaction" or not.

The evidence was uncontradicted that all the money obtained for and handed over to Rand was borrowed by the bank in Boston, Mass., first at 6 per cent. and later at 7 per cent., which last rate was lawful in Massachusetts; wherefore, if defendant's witnesses were believed, Rand never paid more than the equivalent of a rate legal where the bank itself borrowed.

The question has been elaborately argued whether the Revised Statutes sections quoted mean that a national bank in Vermont is only guilty of usury when a bank chartered by the state would be guilty, or whether the reference to state law is merely to fix the *rate* beyond which a national bank cannot go. It is urged that Ricker v. Clark, 54 Vt. 289, is conclusive against denominating as usury what the bank's witnesses say they did. We do not find it necessary to resolve this question, because, if the story of the bank is true, there was no *interest charged* by defendant at all, and the whole transaction is outside any usury act.

[2] Rand asserts that the bank "was not and could not be" his agent "in procuring the money for him." We fail to perceive why such agency *could not* exist; whether it *did* or not was a question for the jury. But,

to be exact, there is no question of usury; for it was lawful for the bank to borrow in Boston at the legal Massachusetts rate, and the real question is whether, when this lawful act was done at Rand's request, it was unlawful for him to reimburse his bank for the cost of doing what he asked to have done.

To be sure, the bank took a note from Rand, which bore interest, but at no stated rate; but between the original parties the whole transaction lay open to investigation by oral evidence, and, if the jury believed what the bank people swore to, no interest at all was charged Rand; he was merely asked to pay the expense of getting the money for him, which included lawful Massachusetts interest, and had no relation to the Vermont or United States usury law. It was error not to submit the case to the jury.

Judgment reversed, with costs, and new trial ordered.